## BOATNER vs. VENTRESS.

The decision of the board of commissioners under the authority of the United States, in regard to donation claims in Florida, is final, and cannot be reexamined in a court of justice.

The recitals in a title emanating from government are evidence against the possessor without title.

APPEAL from the court of the third district, the late judge of the eighth district presiding.

PORTER, J. delivered the opinion of the court. This is a petitory action. The petitioner states, that he is owner, legally and equitably, of 586 61-100 acres of land, situate in the parish of Feliciana, under the laws of the United States, by a virtue of a settlement originally made by John Cooper. That his claim has been contested by Edwin O'-Neale, and the heirs of Lovill Ventress, before the register of the land office and re-

ceiver of public moneys of the United States, at St. Helena court house, who have passed upon the merits of their pretensions, and decided the land to be the property of the petitioner. That in virtue of their decree, the land has been surveyed, and every thing has been done preparatory to the issuing of a patent by the government of the United States. The petition concludes, by stating, that one Glover had entered on the premises, and held the possession of them, which he refuses to deliver up.

Glover disclaimed all title to the property, and averred, that he held under the heirs of Ventress. He prayed that he might be discharged. This prayer was granted, on the heirs of Ventress appearing and pleading to the action.

In their answer, they state, that they are entitled by law, to the estate of their late father, who was justly entitled to the premises, under the several acts of congress in relation to lands in that section of country, where the *locus in quo* is situated;—that he held it under an actual settlement, occupancy and improvement, made by John James Simmonds, about twenty years ago; and that in the month

of July, 1820, a certificate, on the claim of Simmonds, was issued by the register and receiver of the land office, to one Pulaski Cage, who has transmitted the same to the respondents.

They further pleaded prescription, and in case of eviction, claimed the value of their improvements.

The cause was twice tried in the inferior court, and in both instances there was a verdict for the defendant. On the first trial, the judge charged the jury in favour of the defendant, on the plea of prescription, and afterwards set the verdict aside, on a motion for a new trial, being convinced he had erroneously expounded the law on that point.—On the second trial, the court instructed the jury, that the plaintiff could not recover, because he had failed to prove an assignment to him, of the right of the settler, under whose improvement and occupancy the certificate and order issued.

This case was argued last year, but the bench not being at that time full, owing to the indisposition of the presiding justice, and the judges who heard it not being able to come to a conclusion satisfactory to them-

selves, it has been again very fully discussed. As the decision of the points involved in the cause, is of importance to a considerable portion of the citizens of the state, we have bestowed on it a great deal of our attention.

From the statement already made of the allegations in the petition, it is seen, that the plaintiff mainly relies on the decision of the commissioners of the United States in his favour. The evidence introduced in the cause, shows such a decision to have been made, and the first, and by far the most important inquiry devolving on us, is the effect which should be given to it.

For a proper understanding of this point, reference must be had to the several acts of congress, for the adjustment and settlement of land claims in Florida.

Both parties claim by donation from the United States, and the first provision we meet with respect to those who acquired property in this manner from the general government in that section of country, is found in the eighth section of an act of congress, passed the 25th of April, 1812, by which it is enacted, " That the said com-

BOATNER
*vs.*
VENTRESS.

missioners be, and they are hereby authoris-
ed and required to collect and report to con-
gress, at their next session, a list of all the
actual settlers on land in said district, res-
pectively, who have no claim to land deriv-
ed from the French, British or Spanish gov-
ernments, at the time at which such settle-
ments were made." *Land Laws, page* 606.

Whether the report was made within the
time prescribed by the act, the evidence in
the case does not inform us. The next le-
gislation we find on the subject, is an act en-
titled, "an act for adjusting the claims to
land, and establishing land offices in the dis-
tricts east of the island of New-Orleans,"
passed the 3d of May, 1829. By the 8th
section of which, it is provided, " That every
person, or his or her legal representative,
whose name is comprised on the lists, or re-
gister of claims, reported by the said com-
missioners, and the persons embraced in the
list of actual settlers, or their legal represen-
tatives, not having any written evidence of
claim reported as aforesaid, shall, where it
appears by the said report, or by the said
lists, that the land claimed or settled on, had
been actually inhabited or cultivated by such

person or persons in whose right he claims, on or before the 15th day of April, 1813, *be entitled to a grant for the land so claimed, or settled on, as a donation.*"

The 12th section of this act provides for the issueing a certificate by the register and receiver, for all claims confirmed by it, and declares, that if, on presentation to the general land office, such certificate, the commissioner thereof shall be of opinion, that it "has been fairly obtained, according to the true intent and meaning of this act, then, and in that case, a patent shall be granted in like manner as for other lands of the United States." *Land Laws,* 75, *p.* 759.

In the year 1822, the legislature of the United States again acted in relation to these lands, and in the 4th section of an act passed by them, on the 8th of May, of that year, after having made provision for the manner in which they should be surveyed, it is declared, " that in relation to all such claims which may conflict, or in any manner interfere, the said registers and receivers of the public moneys of the respective districts, shall have power to decide between the parties, and shall, in their decision, be governed by such

Eastern District.
*March*, 1830.

BOATNER,
*vs.*
VENTRESS.

conditional lines or boundaries, as may have been agreed on between the parties, either verbally or in writing, at any time prior to the passage of this act." &ast;&ast;&ast;&ast;&ast;&ast;&ast; "*Provided, however*, That should it be made appear, to the satisfaction of the register and receiver of public moneys, of the respective districts in any such case, that the subsequent settler had obtruded on the claim of the former, and had made his establishment after having been forbid so to do, the said register and receiver of public moneys, *shall have power to decide between the parties, according to the circumstances of the case and the principles of justice. Land Laws of the U. States*, 824.

In virtue of the authority thus conferred, the register and receiver decided, that Simmonds, under whom the defendants claim, having made and sold another improvement, before he settled on the *locus in quo,* and having been forbid to do so by Cooper, under whom the plaintiff sets up title; neither the heirs of Ventriss, nor any other person claiming from Simmonds, had a just or equitable title to the land in question.

The defendants resist the force and effect

which the plaintiff seeks to give to this decision. They contend, that by virtue of the provisions of the act of 1819, the quantity of land therein mentioned, was given to them, and that a legal title is vested in them to the premises, of which they cannot be deprived, except by a judgment of a court of justice, and *the law of the land.*

The solution of the question on which the cause turns, depends on the correctness of this position. If a legal title was vested in the claimants, under the acts of Congress already cited, at any time previous to the decree of the commissioners, it is very clear, that a decision by officers of the government, cannot have the force of *res judicata,* nor deprive them of any right which they may have had previous to such decision.

In the case of *M'Clung* vs. *Silliman,* the supreme court of the United States said, that whatever doubts may have, from time to time, been suggested, as to the supremacy of the United States in its legislative, judicial or executive power, no one has ever contested its supreme right to dispose of its own property in its own way. Without this authority, no one could rightfully entertain any other opin-

ion.    The parties to this suit, and others, who have received donations from the government, must, therefore, be content to take them with all the conditions it has thought proper to annex to its gift.    6 *Wheaton*, 605.

On a question of this kind, great respect is due to the opinions of those from whom the title emanates : originating in a desire to benefit the *bona fide* settler, we are bound to presume the same liberal motives which operated in the commencement of their legislation on this subject, governed them to the end : more especially as nothing has been taken back, which was given; and the object of their later enactments, was only to carry into effect, the principle which it is presumed governed them throughout.    Now, the act of 1822, is the legislative construction, by those best acquainted with their own motives, of that of 1819.    It is manifest, congress did not understand a legal title was vested in the settler, by the provisions of this statute.    For if they thought so, they would have left the grantees to their rights at law, well knowing they could not be deprived of them, by an extraordinary tribunal, vested with powers

such as those conferred on the register and

receiver.

That a patent is not necessary in all cases, to confer a legal title to soil, of which the government is the proprietor, cannot be doubted. An act of congress may divest the United States, at once, of all property in a portion of the public lands, and transfer it to an individual. But is perfectly clear the government may legislate in such a manner, as to make the issuing of the patent necessary, to effectuate this object, and we believe their ordinary legislation in respect to the public domain, which is given away, contemplates the retention of entire power over the object given, until that is done.

Indeed, when there is no expression in the statute conveying a different idea, we should think, that the obligation imposed on the donee, to apply for, and obtain, a patent, is strong evidence his title is not to be considered complete, until it is obtained. In many, perhaps the greater number of our sister states, no action of ejectment can be maintained without it. In this, and some others, an equitable title may be enforced in a court of law. But in relation to the Florida lands,

we think there is strong evidence, beyond the obligation imposed on the settlers to apply for a patent, that the government retained complete power over the soil until the patent issued.

The provision contained in the act of 1819, is that on which the defendants principally rely. The 3d section declares, that the persons who appear, by the commissioners report, to have actually settled and cultivated the land claimed by them, on or before the 5th 'of April, 1813, *shall be* entitled to the land so claimed and settled *as a donation.*

The particular language here used, cannot escape the attention of those who are called on to interpret it. The act does not say, that such settlers are confirmed in their right and title to the land: it declares they shall be entitled to a grant for it. It does not divest the United States of the soil, but furnishes a claim to ask them to do so.

In the case of *Foster & Elana* vs. *Nelson,* which decided the right to so large a portion of the lands of that section of our state, in which, those involved in the present controversies, are situated, the supreme court of the United States, in construing the terms of

the treaty between our government and Spain, said, there was an important difference between the expressions therein contained— *all grants of land shall be ratified and confirmed,* and the words, *are hereby ratified and confirmed.* That the latter acted directly on the subject matter—the former only contained an engagement, congress would ratify and confirm them; and that until it did so, the court could not consider them as confirmed. 2 *Peters,* 315.

If we now turn our attention to the language used in the 12th section of the act of 1819, it will be seen, that the case before the court is much stronger:—that the construction we have given to the words, *shall be entitled to a grant,* far from being refined, is in exact consonance with the sense in which the legislature used them, and that such construction is, in fact, the only one, by which all parts of the law can be carried into effect.

It provides for the issuing a certificate, and declares, that on the presentation of it to the general land office, if the commissioner thereof shall be of opinion *that it has been fairly obtained,* according to the true intent and meaning of the act, a patent shall issue.

If the third section conferred a title to the land, and put an end to all power in the government over it, that just cited was useless, and can have no effect. The commissioner had no power to judge of its fairness or unfairness. We think this provision shows conclusively, that congress retained power over these donations, up to the time the patent issued, and that until it did issue, no title vested in the donee.

Under this view of the subject, we are of opinion we cannot interfere with the decision of the register and receiver. The government of the United States has deemed it proper to intrust them with the power of deciding, in case of a conflict between donees, which of them should enjoy its bounty; and as they had no title but that which flowed from the liberality of the donor, they must take with such conditions as he has thought proper to affix to his donation.

The only other question in the case, of importance, is in relation to the want of proof of the right of Cooper, who was the original settler, being transferred to the plaintiff.— There is no evidence of it, except the recital in the certificate of confirmation. The judge

below, was of opinion it was not sufficient. This is the first time such a point has been presented for our decision. The general rule certainly is, that the assignee must prove the right of the assignor is vested in him : and that recitals in a deed are not evidence against third parties. In the case of *Penrose* vs. *Griffith*, the supreme court of Pennsylvania was divided on a similar question. A majority of the court held, that recitals in the patent, bound all who claimed *subsequently* from the state, but not those who had a title *before* the patent issued. One of the judges thought it was *prima facie* evidence against both.— In a subsequent case, the same tribunal determined, that where the defendant showed no title, the recitals in the patent were evidence against him. Such was this case, after the decision of the register and receiver, the defendants had no title to the premises, and as we think the rule well founded in principle, we are of opinion the court below erred in its charge to the jury. 4 *Binney*, 231 : 2 *Sergeant* vs. *Rawle*, 455.

Having come to the conclusion just expressed, it is unnecessary to examine the other questions raised by the several bills of

BOATNER
*vs.*
VENTRESS.

exceptions, for, supposing them all decided in favour of the defendants, the plaintiff must recover. The cause, however, will have to be remanded, to inquire into the value of the improvements placed on the land, while the appellees were in good faith.

It is therefore ordered, adjudged and decreed, that the judgment of the district court, be annulled, avoided and reversed, and it is further ordered, adjudged and decreed, that the case be remanded, to ascertain the value of improvements made by the defendants while in good faith, and that the appellee pay the cost of this appeal.

*Preston* for plaintiff, *Morgan* for defendants.